UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SUN PACKING, INC., | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:12-cv-1605 |
| | § | |
| XENACARE HOLDINGS, INC., | § | |
| FRANK W. RIZZO, | § | |
| BOBBY STORY, | § | |
| STEVE MARKLEY, and | § | |
| GARY SPANIAK, | § | |
| | § | |
| **Defendants.** | § | |

## <u>MEMORANDUM & ORDER</u>

Upon full consideration of Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction, the response and reply, and the applicable law, the Court finds Defendants' Motion must be **GRANTED.**

## I. FACTS

Between June 26, 2008 and November 25, 2008, XenaCare Holdings, Inc. ("Xenacare"), a company specializing in the marketing and retail distribution of consumer healthcare products, allegedly borrowed from Sun Packing, Inc. ("Sun Packing" or "Plaintiff") the total principal sum of at least $977,000. (Compl. ¶¶ 9, 10.)  The principal sum is reflected in a series of promissory notes. *Id.* Xenacare allegedly agreed to pay Sun Packing in installment payments of principal and interest. Xenacare is also liable for all reasonable fees and expenses incurred by Sun Packing in enforcing the notes.  *Id.*

The individual Defendants, Rizzo, Story, Markley, and Spaniak, (the "Guarantors"), executed Guaranty Agreements for each of the notes in which they agreed personally to

guaranty the full payment of the indebtedness under the notes. *Id.* Additionally, the Guarantors granted to Sun Packing a first priority security interest lien in their shares of Xenacare's common stock. (Compl. ¶ 12.)

Plaintiff alleges that Xenacare and Guarantors are in default under the respective debt instruments. (Compl. ¶ 13.) Specifically, Plaintiff alleges three causes of action: breach of promissory notes, breach of guaranties, and breach of security agreements. (Compl. ¶¶ 14, 15, 16.)

Defendants Xenacare, Frank Rizzo, and Bobby Story (collectively referred to as "Defendants") bring this Motion to Dismiss for Lack of Subject-Matter Jurisdiction. Sun Packing filed this suit on May 25, 2012, solely under diversity jurisdiction. 28 U.S.C.A. § 1332. The parties dispute whether complete diversity of citizenship exists. Defendants first moved to dismiss the case on July 31, 2012, and subsequently requested discovery on jurisdiction. This Court granted limited discovery and provided parties until September 25, 2012 to complete discovery. As discovery on this issue is complete, and the Amended Motion is ripe, the Court now considers the jurisdictional question presented.

## II. LEGAL STANDARD

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be found using (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir.1996)**.** The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.

*McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D.Tex.1995). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980).

Dismissal of a plaintiff's case because the court lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977) (per curiam).

## III. ANALYSIS

Defendants' main argument is that Sun Packing was not a real party in interest at the time of filing, and thus did not have the right to sue. Defendants argue that Sun Packing lost its corporate privileges, and did not regain them until after filing the suit. Defendants allege that, if Sun Packing had forfeited its corporate privileges, its citizenship would be determined by the citizenship of its stockholders. Defendants argue that the sole stockholder's citizenship is Florida, not Texas, thus destroying complete diversity.

Plaintiff does not dispute that it was delinquent in paying its franchise taxes. By March 29, 2012, Sun Packing had forfeited its corporate privileges. (Doc. No. 35-8.) Plaintiff's affidavit demonstrates that it paid its corporate taxes by August 15, 2012, about three months after filing this lawsuit. (Doc. No. 39-A.) Plaintiff's status as a corporation was reinstated on October 24, 2012. *Id.* Although Plaintiff was without its corporate privileges between March and October, Plaintiff argues that, once it revived its corporate charter, that charter "related back" to May 25, 2012, the time of filing.

Diversity is determined at the time of the filing of the complaint (the "time-of-filing" rule). It has long been the case that "the jurisdiction of the Court depends upon the

state of things at the time of the action brought." *Mollan v. Torrance,* 22 U.S. 537, 539 (1824). In *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004), the Supreme Court considered a Texas case in which the defendant was a Mexican corporation. At the time of filing, plaintiff, a limited partnership, included two Mexican citizens, though these individuals later withdrew from the partnership. Regardless, the court found that the requisite diversity was absent at the time of filing and explained that "all challenges to subject-matter jurisdiction premised upon diversity of citizenship [are to be measured] against the state of facts that existed at the time of filing...." Put otherwise, "jurisdiction depending on the condition of the parties, is governed by that condition as it was at the commencement of the suit." *Id*. at 571 (quoting *Conolly v. Taylor,* 27 U.S. 556, 2 Pet. 556, 565, 7 L.Ed. 518 (1829)).

Plaintiff cites Texas law for the proposition that any defect caused by the delinquent payment of its taxes was cured by the later payment. Plaintiff argues that its revived corporate status related back to the time of filing. Tex. Tax Code §§ 171.258, 171.314; *G. Richard Goins Const. Co., Inc. v. S.B. McLaughlin Assocs., Inc.*, 930 S.W.2d 124, 128 (Tex. App. 1996) ("The purpose of the statute is to enforce collection of state franchise taxes. Once a corporation pays its delinquent taxes, the corporation's disability is removed, and the corporation may sue and defend in Texas state courts."); *M & M Const. Co., Inc. v. Great Am. Ins. Co*., 747 S.W.2d 552, 555 (Tex. App. 1988) ("Once a corporation pays its taxes, the reinstatement of its charter will relate back and revive whatever rights the corporation had at the time the suit was filed.") Along with these state cases, Plaintiff cites two federal cases, but both relate to the interpretation of Texas law, rather than a federal time-of-filing issue as presented here. *Wood v. B.L. Building Co.*, No. H03-713, 2004 WL

5866352, at *17 (S.D. Tex. June 22, 2004) (discussing plaintiff's standing with the Texas Comptroller for purposes of summary judgment), *Midwest Mech. Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 752 (5th Cir. 1986) (examining whether revival of corporate privileges retroactively validated motion for stay of arbitration). This Court agrees that, for purposes of Texas *state* law, Sunpacking's privileges relate back to May 2012. However, for diversity purposes, this Court finds that the time-of-filing rule must control.

In *ConnectU LLC v. Zuckerberg*, 482 F.Supp.2d 3, 15 (D. Mass. 2007)(*rev'd on other grounds ConnectU LLC v. Zuckerberg*, 522 F.3d 82 (1st Cir. 2008)), the court decided this issue in the context of Delaware law, i.e. "whether a provision of Delaware law that permits retroactivity can affect whether federal diversity jurisdiction existed at the time of the filing of the complaint." *Id.* at 11. The *ConnectU* Court applied the Supreme Court's reasoning from *Grupo* and decided that to allow a retroactive provision under Delaware law "would be to permit a subsequent event to dictate diversity," and to allow retroactivity "would foster precisely the type of litigation and uncertainty that the time-of-filing rule seeks to avoid." *Id.* at 19.

In *Symes v. Harris*, 472 F.3d 754 (10th Cir. 2006), the Tenth Circuit considered the opposite question, whether the district court lacked jurisdiction when the remedy the plaintiffs sought, if granted, would retroactively render them part owners of the defendant and thereby destroy complete diversity. Citing *Grupo,* the Tenth Circuit overturned the district court's finding that it did not have jurisdiction, finding that "the district court's speculation that a post-filing event could destroy diversity by virtue of the plaintiffs' retroactive ownership of RIL [the defendant] directly conflicts with the general rule that the

court determines the parties' citizenship as of the time when the complaint was filed."
*Symes*, 472 F.3d at 758-59. The *Symes* court also found that accepting the district court's
retroactivity analysis would run counter to other rules relating to § 1332 jurisdiction:

> For example, it is well settled that a district court does not lack § 1332 jurisdiction
> if a plaintiff ultimately recovers less than the required jurisdictional amount, if the
> district court dismisses part of the plaintiff's claim on a motion for summary
> judgment (thereby reducing the plaintiff's remaining claim below the requisite
> jurisdictional amount), or if the plaintiff's complaint reveals that a perfect defense
> might be interposed to reduce the alleged amount in controversy below the
> jurisdictional amount. *Id.* at 759.

The Court finds that there is no dispute that Sun Packing had forfeited its corporate
status at the time of filing. The question is whether a federal court should apply a state
law's relation-back provision in order to reestablish corporate status for the purposes of
determining citizenship. Given the strictness of the time-of-filing rule, the Court finds that
it should not rely on a post-filing event, such as the payment of taxes, to determine
citizenship at the time of filing. The payment of the taxes after filing is a contingent post-
filing event, which means that, until those taxes are paid, it would be unclear if the defect
in jurisdiction is cured. An alternative scenario that could have occurred would involve Sun
Packing not curing its tax delinquency—thus remaining without corporate status during the
entirety of the lawsuit. Uncertainty as to whether a party would choose to cure a tax
delinquency would prevent an early judicial resolution of the issue of jurisdiction.
Specifically, for this Court to rely on Texas' relation-back provision would foster the very
uncertainty that *Grupo* and the time-of-filing rule seek to avoid.

The Court next explores the possibility that the parties could still be considered
diverse. Even if Sun Packing lost its corporate status due to tax delinquency, this loss may
not need to be treated as a loss of citizenship for purposes of diversity jurisdiction. Federal

Rule of Civil Procedure 17(b) provides that the capacity of a corporation to sue or be sued is determined by the law under which it was organized. In *Farris v. Sambo's Restaurants, Inc*., 498 F. Supp. 143, 145 (N.D. Tex. 1980), the court relied upon *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and its progeny to find that, if a state law would prevent a suit, the same lawsuit could not be filed in federal court under diversity jurisdiction. "While technically the corporation may have capacity to sue in the federal court pursuant to Rule 17(b) it cannot recover where recovery would not be possible in the state court. Any valid state law closing its courts to a foreign corporation which is not qualified to do business in the state must, therefore, be given effect in the federal courts of such state in a case based solely on diversity or alienage jurisdiction." *Farris*, 498 F. Supp. at 145. Similarly, in *Woods v. Interstate Realty Co*., 337 U.S. 535 (1949), a Tennessee corporation not registered to do business in Mississippi filed a federal diversity action. The Supreme Court held that the Mississippi disqualification statute closed the door to the federal courthouse just as effectively as it closed the door to the state courthouse.

Thus, the Court turns to state law to determine whether a Texas corporation continues its corporate status for purposes of adversarial proceedings. On first glance, Texas law seems contradictory on this question. Under Tex. Tax Code § 171.251, the comptroller shall forfeit the corporate privileges of a corporation for failure to pay assessed franchise taxes within 45 days of becoming due. The effect of a forfeiture under § 171.251 is that: (1) the corporation *shall be denied the right to sue or defend in a court of this state*; and (2) each director or officer of the corporation is liable for a debt of the corporation as provided by § 171.255 of this code. Tex. Tax Code § 171.252 (emphasis added).

On the other hand, the Texas Business Code entitles a dissolved business to conduct certain activities, including adversarial proceedings, for a three year period. Upon the comptroller's certification, the Secretary of State may then forfeit the corporate charter. Tex. Tax Code § 171.309. Forfeiture of a corporate charter for non-payment of taxes acts as a dissolution of the corporation. See V.A.T.S. Bus.Corp.Act, Art. 7.01B(1). Under the Tex.Bus.Corp.Act, Art. 7.01B(1), a corporation may be dissolved by order of the Secretary of the State when it is established that the corporation has failed to file any report within the time required by law, or *has failed to pay any fees, franchise taxes or penalties proscribed by law* when the same have become due and payable. (emphasis added). Under the Tex.Bus.Corp.Act, Art. 7.12A(1)-(4), a dissolved corporation shall continue its corporate existence for a period of three years from the date of dissolution for a number of purposes, including prosecuting or defending in its corporate name any action or proceeding by or against the dissolved corporation.

Very few cases have discussed the interplay between dissolution under the Tex. Tax Code and the Tex. Bus. Corp. Act. The state court in *Mobile Homes of America, Inc., v. Easy Living, Inc*., 527 S.W.2d 847, 849–50 (Tex.Civ.App. 1975), analyzed this question, but it was prior to the 1996 amendment to the Tex. Bus. Corp. Act, which amended the Act to include corporations that had failed to pay franchise taxes. After the 1996 amendment, corporations that failed to pay franchise taxes were considered as 'dissolved' within the meaning of article 7.12. Because corporations which failed to pay franchise taxes were not yet included in the Act in 1975, the *Mobile Homes* court found that the Tex. Bus. Corp Act did not apply, and thus, Mobile Homes could not bring suit in state court.

The bankruptcy court in the Northern District of Texas analyzed this interplay post-1996. *In re ABZ Ins. Services, Inc.*, 245 B.R. 255 (Bankr. N.D. Tex. 2000). In essence, the Court found that there are two separate steps to forfeiture: first, the Comptroller of Public Accounts forfeits the corporation's privileges, and second, the Secretary of State forfeits the charter. In order harmoniously to interpret the Tex. Tax Code and the Tex. Bus. Corp. Act, the court found that the state Comptroller shall forfeit a corporation's privileges if the franchise tax report is not filed or the fee is unpaid. In such event, the corporation does not have the right to sue or defend a suit in court. Plaintiff acquired this status when the Comptroller recorded a lien against Sun Packing for delinquent franchise taxes on or about April 18, 2012.[1] (Doc. No. 36-1.)

Following the Comptroller's actions, the Secretary of State may forfeit the charter and thus dissolve the corporation under 7.12F(1) of the Tex. Bus. Corp. Act. Such dissolution occurred on July 27, 2012. (Doc. No. 35-2.) The dissolution gave Sun Packing the limited rights to sue and be sued for three years, even if they had never cured their delinquent tax status. But in the period between April 18, 2012 and July 27, 2012, the period in which Sun Packing filed this suit, the Secretary of State had not yet acted. The Tax Code controlled, meaning Sun Packing did not yet have the corporate rights to sue as a dissolved corporation. Given that Sun Packing did not have the right to sue Defendants, the

---

[1] The Court notes that the date the Comptroller forfeited Sun Packing's privileges may have been as early as March 29, 2012. The Secretary of State found that "the Comptroller of Public Accounts determined that the taxable entity has not revived its forfeited privileges within 120 days after the date that the privileges were forfeited." (Doc. No. 35-2.) The Secretary of State forfeited the charter on July 27, 2012. Calculating backwards, 120 days before that date is March 29, 2012, the date on or about which the Comptroller may have first recorded the delinquency, by Defendants' estimation. Even if the Court proceeds from the date the Comptroller recorded a lien against Sun Packing, the date suggested by Plaintiff, Sun Packing's date of filing this suit is still after the Comptroller's actions and before the Secretary of State took action.

Court finds it was not the real party in interest, and that Sun Packing's stockholder was the only entity who had the right to sue during that window. The passing of the right to sue to stockholders is discussed in the case of *Favorite Oil Co. of Beaumont & Cleburne v. Jef. Chaison Townsite Co.*, 162 S.W. 423, 424 (Tex. Civ. App. 1913), which specifically considered the case of a forfeiture due to delinquent franchise taxes. The court expressed that "the right to institute this suit was denied [to] the corporation by the express terms of the statute…We think that in such case, not on account of refusal, but on account of the inability of the corporation to sue under the rule stated, a court of equity should entertain a suit by stockholders when necessary to prevent a failure of justice." *Id.* at 424. *See also Canadian Country Club v. Johnson*, 176 S.W. 835, 838 (Tex. Civ. App. 1915); *Fed. Crude Oil Co. v. Yount-Lee Oil Co.*, 122 Tex. 21, 36, 52 S.W.2d 56, 63 (1932); *Maldonado v. Zamudio,* 1983 U.S. Dist. Lexis 16336, at *3 (S.D. Tex. 1983); *Pratt-Hewit Oil Corp. v. Hewit*, 122 Tex. 38, 42, 52 S.W.2d 64, 65 (1932); *Humble Oil & Ref. Co. v. Blankenburg*, 149 Tex. 498, 503, 235 S.W.2d 891, 894 (1951).

Thus, the Court inquires into the citizenship of Sun Packing's stockholder. On the day this lawsuit was filed, May 25, 2012, Sun Packing had one stockholder, Jon Grossman. (Jon Grossman Dep, 37:1-3.) For the purpose of determining diversity jurisdiction, Mr. Grossman's citizenship is equal to his domicile. *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996) ("with few exceptions, state citizenship for diversity purposes is regarded as synonymous with domicile.")  Domicile is determined by a two-part test: (1) the residence of the party in a state and (2) the intent of the party to remain there indefinitely. Specifically, the court must evaluate a variety of factors, which may include the places where: (1) the litigant exercises civil and political rights, (2) pays taxes, (3) owns real and

personal property, (4) has driver's and other licenses, (5) maintains bank accounts, (6) belongs to clubs and churches, (7) has places of business or employment, and (8) maintains a home for his family. *Coury*, 85 F.3d at 251. Although Mr. Grossman refused to answer questions related to his bank account, his membership in a church or synagogue, his mailing address on income tax returns, and the four Florida companies that he controls, it is clear that Mr. Grossman should be considered a citizen of Florida. It is undisputed that he owns real property in Florida, on which he pays local property taxes, and on which he claims a homestead exemption. (Grossman Dep. 25:12-17; 68-7:10.) Mr. Grossman also has a current Florida drivers license (Doc. No. 35-3) and is registered to vote in Florida (Grossman Dep. 16:13-14).Plaintiff does not dispute that Xenacare, Rizzo, Story, and Markley all reside in Florida. (Compl. ¶ 2-6.) Because of Mr. Grossman's Florida citizenship, complete diversity is destroyed and this Court does not have subject matter jurisdiction.

*Grupo* acknowledges that, if there is no other bar to re-filing the case, the plaintiff can re-file the same action in the same district court. *Grupo*, 541 U.S. at 581 ("even if the parties run the case through complete 'relitigation in the very same District Court in which it was first filed in 1997, the 'waste' will not be great. Having been through three years of discovery and pretrial motions in the current case, the parties would most likely proceed promptly to trial."); *see also Castillo Grand LLC v. Sheraton Operating Corp.*, 2009 WL 4667104 (S.D.N.Y. Dec. 9, 2009). Additionally, a dismissal for lack of subject matter jurisdiction is without prejudice to a plaintiff's right to refile his case in a court of proper jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 188 (5th Cir.1986).

**IV. CONCLUSION**

Finding no basis for subject matter jurisdiction, the Court **GRANTS** Defendants'

Motion and dismisses Plaintiff's claims without prejudice.

**IT IS SO ORDERED.**

SIGNED this the 6th day of December, 2012.


**KEITH P. ELLISON**
**UNITED STATES DISTRICT COURT JUDGE**
**SOUTHERN DISTRICT OF TEXAS**